Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                                    1:20v-05064

| | |
|---|---|
| Steven Gil, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          - against -<br><br>The Coca-Cola Company,<br><br>                    Defendant | Class Action Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      The Coca-Cola Company ("defendant") manufactures, distributes, markets, labels and sells a cola beverage flavored by vanilla the Coke brand ("Product" or "Vanilla Coke").

2.      The Product is available to consumers from retail and online stores throughout New York State in  various sizes including 12 OZ (354 ML).

3.      The relevant front label representations include "Vanilla," "Coca-Cola" and "Vanilla Flavored & Other Natural Flavors."

1



4.     The representations are misleading because although the characterizing flavor is represented as vanilla, the vanilla taste is not exclusively from vanilla and is from artificial flavors.

5.     62% of consumers surveyed by Nielsen say they try to avoid artificial flavors.[1]

6.     Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[2]

7.     Label Insight, a marketing company focused on consumer products, determined that 76% of consumers avoid products with artificial flavors.[3]

---

[1] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[3] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

8.      The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla,

9.      Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[4]

10.     Vanilla's unique flavor and aroma is due to at least 200 compounds scientists have identified.[5]

11.     Re-creating the complexity and richness of "vanilla flavor" provided by vanilla beans is a task science has been unable to duplicate, which is why consumers are willing to pay more for products labeled solely with the term "Vanilla."

12.     These include volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."

13.     The non-volatile constituents include "tannins, polyphenols, free amino acids and resins."

14.     During the first half of the 20th century, "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure'" was rampant, which resulted in consumers expecting vanilla but receiving its synthetic replacement, vanillin:[6]

---

[4] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.
[5] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.
[6] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA (the FDA stated, "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards").

Misbranding was alleged for the further reason that the product was labeled and branded so as to deceive and mislead the purchaser thereof, in that said label was calculated and intended to create the impression and belief in the mind of the purchaser that the product was a genuine vanilla extract, whereas, in fact, it was a mixture of vanilla extract, vanillin, and coumarin, artificially colored with caramel.

Notice of Judgment No. 2241, Adulteration and Misbranding of…Vanilla Extract, United States Department of Agriculture, W. M. Hays, Acting Secretary, Washington, D.C., January 23, 1913.

15.    Due to the widespread fraud in vanilla products, vanilla became the only flavor for which a standard of identity was established, to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[7] *See* 21 C.F.R. § 169.175 – 21 C.F.R. § 169.182 (vanilla products); *see also* 1 NYCRR § 250.1(a)(17) ("the commissioner hereby adopts the following as the standards of identity…as published in…21 CFR part 169").[8]

16.    Where only vanilla is the source of a flavor, it is required to "bear[s] the name of the food specified in the definition and standard." *See* 21 U.S.C. §343(g); *see also* 21 C.F.R. § 169.175 (b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'"); 21 C.F.R. § 169.177 (b) ("The specified name of the food is 'Vanilla flavoring'.").

17.    Non-standardized flavors on finished products "are labeled as either natural or artificial."[9] *See* 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients…as 'spice', 'natural flavor', or 'artificial flavor.'"); *see also* 21 U.S.C. § 343(i) (non-standardized flavors "may be designated as spices, flavorings, and colorings without naming each.").

18.    These flavors often consist of flavor combinations, and their labeling "is different –

---

[7] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.
[8] 1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1.
[9] Donna Berry, Playing the natural flavor game, Food Business News, Jan. 1, 2018.

as well as highly regulated – at the industrial level so that the end user, the processor, knows the flavor source."[10]

19.     These ingredients are known as "WONF" flavors, designated as "natural flavor," and contain "both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii).

20.     Due to the record high vanilla prices, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."[11]

21.     Flavor companies have adapted by creating "compounded vanilla flavor[s] with other natural flavors" that can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans."[12]

22.     These "WONF" flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including "naturally produced vanillin," maltol and piperonal, blended together so that consumers believe what they are tasting is real vanilla.[13]

23.     The Product's ingredient list discloses "Natural Flavors," which refers to the flavor combination indicated in the front label statement of identity, "Coca-Cola Vanilla Flavored & Other Natural Flavors."[14]

---

[10] *Id*.
[11] Uliana Pavlova, Vanilla Morphs From Plain to Premium as Prices Refuse to Go Down, Bloomberg, July 27, 2018.
[12] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[13] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "[T]hat *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).
[14] "& Other Natural Flavors" is equivalent to "With Other Natural Flavors."



CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, CARAMEL COLOR, PHOSPHORIC ACID, NATURAL FLAVORS, CAFFEINE.

24.     The front label is consistent with the "WONF" labeling format, revealing that the "Natural Flavors" is comprised of vanilla and "other natural flavors." *See* 21 C.F.R. § 101.22(i)(1)(iii) ("the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words 'with other natural flavor'")

25.     However, when a product's primary characterizing flavor is vanilla, it is misleading to use the "WONF" labeling structure because the vanilla standards take precedence over the general flavor regulations where they may otherwise be in conflict. *See* 21 U.S.C. 343(g); *see also* 21 C.F.R. § 169.175-182 (vanilla products) *compare with* 21 C.F.R. § 101.22(i).

26.     The vanilla regulations require that where a product is labeled as vanilla, the addition of non-vanilla flavors that increase and promote a vanilla taste are required to be declared as artificial flavors, so consumers are not misled. FDA, Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1966 ("The vanilla standard determines vanilla as a standardized product. If other flavorings are added, then the vanilla is no longer a standardized product and should therefore be labeled artificial or imitation.")

27.     Where a product is flavored with a combination of vanillin (non-vanilla) and vanilla,

it must inform consumers that it "'contains vanillin, an artificial flavor (or flavoring)'" on the ingredient list and front label. *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract").

28.    According to representatives of FEMA, the flavor industry trade group:

> The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation. This means that a flavoring mixture of vanilla extract and vanillin produced through a "natural" process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a)(3)) cannot be described as "vanilla extract WONF," "vanilla WONF" or other similar descriptive terms.

> "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018.

29.    Consumers cannot be expected to know intricate labeling regulations for vanilla ingredients, which makes defendant's representation of "Other Natural Flavors" deceptive and misleading.

30.    The non-vanilla artificial flavors are not disclosed on the front label or the ingredient list, which is deceptive, misleading and in violation of law.

31.     A reasonable consumer cannot follow up or learn the truth that the Product contains non-vanilla artificial flavors from reading the Product's ingredient list because defendant labels this combination as "Natural Flavor."

32.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

33.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

34.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

35.     Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

36.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $1.99 per 16 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

37.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

38.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

39.     Plaintiff is a citizen of Bronx County, New York.

40.     Defendant is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia and therefore is a citizen of Georgia.

41.     "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

42.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred, *viz*, the purchase of the Product and the misleading representations relied upon by plaintiff.

43.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

44.    Plaintiff Steven Gil is a citizen of Bronx, Bronx County, New York.

45.    Defendant The Coca-Cola Company is an Illinois corporation with a principal place of business in Batavia, Georgia, Fulton County.

46.    During the relevant statutes of limitations, plaintiff purchased the Product within his district and/or State for personal consumption and/or use in reliance on the representations the Product did not contain artificial vanilla flavors.

47.    Plaintiff purchased the Product at grocery stores and convenience stores near his residence during their normal hours of operation.

48.    Plaintiff bought the Product because he liked the product type for its intended use and expected its vanilla flavor to not be enhanced by artificial flavors, because the front label did not disclose this nor was it clarified by the ingredient list.

49.    Plaintiff would buy the Product again if assured it did not contain vanilla-enhancing ingredients in addition to vanilla and if it was labeled in a non-deceptive manner.

50.    Plaintiff is unable to rely on the Product's label in the future and he would like to do so if the Product is reformulated or the label is changed to truthfully disclose its contents.

Class Allegations

51.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

52.    Plaintiff seeks to certify a class of purchasers in this state for monetary relief and a separate class for injunctive relief under Rule 23(b)(2).

53.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

54.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

55.    Plaintiff is an adequate representative because his interests do not conflict with other members.

56.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

57.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

58.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

59.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL"), §§ 349 & 350</u>
<u>(Consumer Protection Statutes)</u>

60.    Plaintiff incorporates by reference all preceding paragraphs.

61.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

62.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

63.    Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

64.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla flavors.

65.    The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a small amount of vanilla is present and the vanilla taste is from artificial vanilla flavors.

66.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

67.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

68.    Plaintiff incorporates by reference all preceding paragraphs.

69.    Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

70.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla flavors.

71.    The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a small amount of vanilla is present and the vanilla taste is from artificial vanilla flavors.

72.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

73.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

74.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

75.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the

Product.

76.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

77.    Plaintiff incorporates by reference all preceding paragraphs.

78.    The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

79.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla flavors.

80.    The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a small amount of vanilla is present and the vanilla taste is from artificial vanilla flavors.

81.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

82.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

83.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

84.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

85.    The Product did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable.

86.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

87.    Plaintiff incorporates by reference all preceding paragraphs.

88.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla flavors.

89.    The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a small amount of vanilla is present and the vanilla taste is from artificial vanilla flavors.

90.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

91.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

92.    Plaintiff incorporates by reference all preceding paragraphs.

93.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   July 1, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
_____
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:20v-05064
United States District Court
Southern District of New York

Steven Gil, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

The Coca-Cola Company,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  July 1, 2020

/s/ Spencer Sheehan
Spencer Sheehan